```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
---------------------------------------------------------
                                           :
KORI D. WARD,                              :    CASE NO. 4:07-cv-44
                                           :
         Plaintiff,                        :
                                           :
vs.                                        :    OPINION & ORDER
                                           :    [Resolving Doc. No. 14, 47]
DR. ROBERTS,                               :
DR. OKIYAHA,                               :
DR. HIDDAD                                 :
                                           :
         Defendants.                       :
                                           :
---------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On January 8, 2007, Plaintiff Ward filed a complaint, alleging that the state penitentiary and several prison doctors had violated his Eighth and Fourteenth Amendment Rights in failing to properly treat an injury to his hand. [Doc. 1]  On April 10, 2007, the Court dismissed the prison as a party. [Doc. 7]. On June 26, 2007, Defendant Dr. John Roberts filed the instant motion for summary judgment. [Doc. 14]. On June 29, 2007, the Court granted Plaintiff Ward's motion for the appointment of counsel pursuant to Local Rule 83.10. [Doc. 15]. On September 5, 2007, the Court granted Ward's attorney's motion to withdraw as counsel and granted Plaintiff Ward additional time to respond to the pending motion for summary judgment. [Docs. 35 & 36]. The Court gave Plaintiff Ward two more extensions after he was taken out of the state penitentiary for a hearing. [Docs. 44 & 48]. To date, Plaintiff Ward has failed to respond to Roberts' motion for summary judgment.

**I. Background**

-1-

Case No. 4:07-cv-44
Gwin, J.

While incarcerated by the State of Ohio, Plaintiff Ward injured his right hand and wrist on April 13, 2005. He was taken to St. Elizabeth's Hospital in Youngstown, Ohio. The treating hospital physician recommended immediate surgery and placed the hand and wrist in a temporary splint. Plaintiff Ward was then returned to Ohio State Penitentiary ("OSP").  Ward claims he wrote several kites to OSP Physician Dr. Hiddad asking for an appointment but was not given one. He states that Hiddad allowed him to "sit in [his] cell for four months with no medical attention... ." (Compl. at 3.) He indicates that after Dr. Hiddad examined his hand and wrist, he indicated that Ward would need surgery to correct the break but then waited four more months to schedule the surgical appointment.

Plaintiff Ward claims that he also saw OSP Physician Okiyaha. He alleges that Okiyaha told him, without taking an x-ray, that the hand was no longer broken. When Plaintiff Ward pointed out that the bone was almost protruding through the skin, he states that Okiyaha told him he was seeing scar tissue.  He states that Dr. Okiyaha increased the dosage of his medication but provided no other treatment.

On April 21, 2005, Defendant Roberts saw Plaintiff Ward at the Corrections Medical Center ("CMC"). [Ex. 1, ¶7,8.]  Dr. Roberts initially x-rayed Ward's wrist and hand and concluded that surgery would not be needed. [Doc. 1; Ex. 1, ¶8].  Roberts saw Ward pursuant to a referral, that stated that Ward had a right hand dislocation, a fracture of the 4th and 5th metacarpal from April 13, 2005, that he had a cast on, and there was no vascular compromise or neuron deficit. [*Id.*; Ex. 1-a]. Roberts reviewed an x-ray of Ward's hand taken on that date. [*Id.*]  Plaintiff Ward asserts that Roberts told him the bone would heal on its own. [Doc. 1].  In contrast, Defendant Roberts states that he told Ward to continue on his splint for four weeks and thereafter he would need a follow-up

Case No. 4:07-cv-44
Gwin, J.

visit. [Ex. 1, ¶8; Ex. 1-a].

On August 4, 2005 Plaintiff was again seen at the CMC clinic at OSP on a Consultation Request by Dr. Hiddad. Ex. 2, pg.002. At that consultation, Dr. Hiddad noted a dorsal hand deformity of the 4th and 5th metacarpal of the right hand and recommended surgery. *Id.* On August 17, 2005, Roberts performed the surgery that he originally had said would not be needed. [Doc. 5]. Roberts claims that he had no control over Plaintiff's treatment following the April 21, 2005 examination, nor any control whether Plaintiff would be scheduled for the follow up appointment. [Ex. 1, ¶9.] Plaintiff does not contend that there were any problems with the surgery.

Ward asserts that the three physicians committed medical malpractice and provided negligent treatment. He also contends that they were deliberately indifferent to his serious medical needs. He seeks compensatory and punitive damages.

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

Case No. 4:07-cv-44
Gwin, J.

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Analysis

The Eighth Amendment prohibits cruel and unusual punishment, i.e., punishment that runs afoul of evolving societal standards or involves the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). "Punishment" for Eighth Amendment purposes need

Case No. 4:07-cv-44
Gwin, J.

not come in the form of a criminal penalty. Conditions of incarceration may also constitute punishment actionable under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." (internal quotations omitted)).

In the prison context, an Eighth Amendment claim includes both objective and subjective components. The objective component requires a prisoner to show the conditions of his incarceration posed "a substantial risk of serious harm." *Id*. To satisfy the subjective component, a prisoner must establish that the prison official responsible for these conditions acted with "deliberate indifference." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). An official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A prisoner states a cause of action by alleging that prison authorities have denied reasonable requests for medical treatment, when there was an obvious need for such attention, and which exposes the prisoner to undue suffering or the threat of tangible residual injury. *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976); *see also Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "Where a prisoner has received some medical attention and the

Case No. 4:07-cv-44
Gwin, J.

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *quoting Westlake*, 537 F.2d at 860 n.5. Allegations of negligence or medical malpractice do not state a claim under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5. "Allegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fail to state a cause of action." *Selby v. Martin*, 84 Fed. Appx. 496, 499 (6th Cir. 2003).

Plaintiff Ward alleges that he did not get adequate medical treatment for his hand for several months, despite repeated requests. Plaintiff Ward does not set forth any facts that allege Dr. Roberts was responsible for the denials of his requests. Dr. Roberts testifies that he was not responsible for the denials. [Ex. 1]. Further, while Dr. Roberts recommended a follow-up for Plaintiff Ward, the Department of Rehabilitation and Correction at CMC would have been responsible for scheduling it. [Ex. 1].

Plaintiff alleges that Dr. Roberts' diagnosis of his hand was inadequate. Dr. Roberts saw Plaintiff Ward only once before the surgery, and upon reviewing an x-ray determined that Ward should wait four weeks with his hand in a splint before another consultation. His diagnosis of Plaintiff Ward was not "deliberately indifferent" to Ward's health, even though it may have been incorrect. In a later consultation, another doctor determined that he had dislocated his fourth and fifth metacarpal, and would need surgery. This may state a claim for medical malpractice, and Plaintiff may file that claim in the proper state court. It does not rise, however, to a violation of Ward's constitutional rights. *See Owens v. Hutchinson,* 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than

Case No. 4:07-cv-44
Gwin, J.

a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim.") *See also Street v. Corrections Corp. of America,* 102 F.3d 810, 816 n. 13 (6th Cir. 1996).

The Court declines to exercise supplemental jurisdiction over the remaining state-law claims against Defendant Roberts, in light of the resolution of all claims over which the Court has original jurisdiction, and because the claim substantially predominates the remaining claims. *See* 28 U.S.C. § 1367(c)(3).

### IV. Conclusion

In conclusion, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


Dated: October 23, 2007                    s/    *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE